[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 24-10244

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTONIO QUINNTELL WHITE,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cr-00050-TKW-1

————————————

Before JORDAN, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Antonio Quinntell White challenges his 108-month sentence for possession of a firearm by a convicted felon, arguing that it rests on an overemphasis of his criminal history and a mischaracterization of his prior offenses. But the District Court carefully weighed the 18 U.S.C. § 3553(a) factors, including White's extensive criminal record and the dangerous nature of his offense. Because the sentence is substantively reasonable, we affirm.

I.

On May 23, 2023, a Florida Highway Patrol (FHP) trooper observed a car speeding and tailgating another vehicle. A check of the car's license plate revealed that the registered owner's driver's license was invalid. The trooper activated the patrol car's emergency lights to initiate a stop, but the driver—Antonio Quinntell White—refused to pull over, triggering a chase.

White's driving became increasingly reckless as he attempted to evade capture. He veered into a ditch, collided with a culvert, became airborne, and reentered the roadway, where his car struck an FHP vehicle. Despite the collision, White sped through a red light, ignored a stop sign, and nearly collided with another motorist. An FHP trooper executed a precision immobilization technique (PIT maneuver), causing White's car to lose control and hit a curb. Undeterred, White continued fleeing, prompting a second PIT maneuver that finally stopped his vehicle.

White exited the car holding a handgun. Despite repeated verbal commands to drop the weapon, he fled on foot, discarding the firearm, magazine, and ammunition during the chase. Officers apprehended White and recovered the discarded items.

A federal grand jury indicted White on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty under a plea agreement.

The Presentence Investigation Report (PSI) calculated a total offense level of 23, reflecting:

- A base offense level of 24, under U.S.S.G. § 2K2.1(a)(2), based on prior felony convictions for a crime of violence and a controlled substance offense;

- A two-level enhancement for reckless endangerment during flight, under U.S.S.G. § 3C1.2, because White created a substantial risk of death or serious bodily injury; and

- A three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

The PSI assigned White a criminal history category of VI, based on 23 criminal history points. His prior convictions included multiple drug offenses, repeated instances of fleeing and eluding police, and a 2016 conviction for attempted first-degree murder. The PSI also noted 11 prior arrests that did not result in convictions.

The advisory Guidelines range was 92 to 115 months, with a statutory maximum sentence of 10 years.

White objected to the two-level enhancement for reckless endangerment, arguing that the FHP trooper's actions, not his own, created the risk of injury. He also filed a sentencing memorandum requesting a downward variance based on mitigating circumstances. White cited his traumatic childhood, including being kidnapped at five years old due to his mother's drug debts, suffering a head injury during the resulting police chase, being molested by a cousin, and growing up in a high-crime area. He also argued that his criminal history was overstated, noting that many of his offenses involved minor traffic violations and simple drug possession.

At sentencing, the District Court overruled White's objection to the enhancement, finding that his actions—independent of the trooper's conduct—created substantial risk to the public. The Court acknowledged White's difficult upbringing and some overrepresentation in his criminal history but emphasized the seriousness of his conduct and pattern of similar offenses. The Court concluded that White's repeated disregard for the law, dangerous behavior, and proximity of the offense to his release from custody warranted a sentence within the Guidelines range. The Court imposed a 108-month sentence, along with three years of supervised release.

## II.

White contends that his 108-month sentence is substantively unreasonable because the District Court overstated the significance of his criminal history and mischaracterized his prior offenses. Not so.

We consider the substantive reasonableness of a sentence under a deferential abuse of discretion standard. *United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022). In reviewing the reasonableness of a sentence, we do not substitute our judgment for that of the district court and will "affirm a sentence so long as the court's decision was in the ballpark of permissible outcomes." *Id.* at 1355 (quotation marks omitted). The party challenging the sentence bears the burden of showing that it is unreasonable considering the record and the § 3553(a) factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018).

White first argues that the District Court placed excessive weight on his criminal history. This argument fails. While White highlighted that many of his prior offenses were minor, such as traffic violations and drug possession, the Court reasonably emphasized the dangerous nature of his repeated fleeing and eluding convictions. The Court noted that these offenses mirrored his conduct in this case, underscoring a pattern of endangering public safety and a persistent lack of respect for the law. These are precisely the considerations Congress intended under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(C); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1263 (11th Cir. 2015).

White's criminal history points totaled 23, far exceeding the 13 required for the highest category of VI. While the District Court acknowledged that White's history included non-violent offenses, it emphasized the repeated instances of fleeing police—both on foot and in vehicles—and the consistency of that behavior with this

offense. The Court's conclusion that his criminal history demonstrated recidivism and a danger to public safety was well within its discretion.

White also argues that the Court mischaracterized his record by stating that "a lot" of his prior offenses involved fleeing and eluding. This argument is meritless. The PSI documented multiple instances of fleeing or resisting law enforcement. While White sought to minimize these convictions, the Court reasonably viewed them as showing a broader pattern of disregard for lawful authority. *See Rosales-Bruno*, 789 F.3d at 1263.

The reasonableness of White's sentence is bolstered by its placement within the advisory Guidelines range of 92 to 115 months. A sentence within this range is ordinarily deemed reasonable. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). The District Court also addressed both aggravating and mitigating factors. It considered White's traumatic childhood and current family support but found that these factors did not outweigh the seriousness of the offense or the danger it posed to the public. The Court emphasized that White committed this offense less than a month after his release from custody for another driving-related conviction, highlighting his recidivism. These findings align with the § 3553(a) factors and further support the sentence imposed.

In the end, the Court's decision reflects careful balancing, not error. It tied its reasoning directly to § 3553(a)'s purposes, including promoting respect for the law, deterring future offenses, and protecting the public.

### III.

White has not met his burden of showing that his sentence is substantively unreasonable. The District Court acted within its discretion in considering the record and imposing a sentence firmly grounded in the § 3553(a) factors. We affirm.

**AFFIRMED.**